## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                          **Case No. 3:07cr60/LC/CJK**
                                                    **3:08cv519/LC/CJK**

**MARQUES D. GRIMES,**
     **Defendant**.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon defendant's third amended motion to vacate, set aside, or correct sentence (doc. 92), filed pursuant to 28 U.S.C. § 2255. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and NORTHERN DISTRICT OF FLORIDA LOCAL RULE 72.2(B). Having conducted a careful review of the record and the arguments presented, the undersigned concludes that the motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The defendant, Marques D. Grimes, and a co-defendant, Oniel Nicholas Williams, were charged with bank robbery by force or violence (count I), in violation of 18 U.S.C. § 2113(a) and (d), and possession of a firearm in furtherance of a crime of violence (count II), in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 12, 1-2) Based upon a separate incident, defendant was charged with additional counts of bank robbery by force or violence (count III), in violation of 18 U.S.C. § 2113(a) and (d), possession of a firearm in furtherance of a crime of violence (count IV), in violation of 18 U.S.C. § 924(c)(1)(A), and unlawful possession of a firearm in interstate

commerce (count V), in violation of 18 U.S.C. § 922(g)(1).  (Doc. 12, 2-4)  Defendant entered a plea of guilty to all counts as charged (doc. 74, 29), and the district court sentenced him to  43 months imprisonment on counts I, III, and V (the terms to run concurrently), 42 months imprisonment on count II (the term to run consecutively to all other counts), and 150 months imprisonment on count IV (the term to run consecutively to all other counts).  (Doc. 73, 9-10)

The evidence in this case was overwhelming.  Defendant's convictions stem from his involvement in two bank robberies.  According to the uncontested facts in the presentence investigation report, and the factual basis for the plea, which defendant adopted as accurate, on February 9, 2007, at approximately 4:19 p.m., two black men, both wearing ski masks, jackets, and gloves, entered the Sun Trust Bank at 6700 North Davis Highway, in Pensacola, Florida.[1]  (PSR ¶ 9)  Upon entering the bank, one of the men, subsequently identified as Mr. Williams, brandished a small semiautomatic handgun and ordered everyone to the floor.  (PSR ¶ 10)  The other subject, subsequently identified as the defendant, Mr. Grimes, jumped over the front counter to gain access to the vault, which bank employees did not open.  (PSR ¶ 10)

Defendant then approached a teller and demanded that she place money in a yellow plastic bag.  The teller complied, giving defendant approximately $6,427.00 from her drawer.[2]  (PSR ¶ 10)  Grimes and Williams proceeded to exit the bank and fled the premises in a white Dodge Intrepid.  During the robbery, the teller had concealed a dye pack in the money she placed in defendant's bag; the dye pack

---

[1] References to the presentence investigation report will be by "PSR" followed by the paragraph number.

[2] The bank's deposits were insured by the Federal Deposit Insurance Corporation.

exploded in the car outside the bank.  Grimes and Williams drove to a Walmart on Creighton Road, where they abandoned some of the dye-stained money and the plastic bag.  (PSR ¶ 10)  The two men spent the night at a motel in Mobile, Alabama, but thereafter returned to Pensacola.  (PSR ¶ 10)  On February 22, 2007, authorities recovered a yellow plastic bag containing dye-stained money from the Walmart on Creighton Road.  (PSR ¶ 11)  A Walmart surveillance video showed an unidentified male passenger in a Dodge Intrepid dump the bag.  (PSR ¶ 11)

On April 3, 2007, defendant entered the same Sun Trust Bank location and demanded money from one of the tellers.  When the teller questioned him, defendant, who was holding a chrome semiautomatic handgun, replied, "[G]ive me the money, bitch or I'll shoot you."  (PSR ¶ 12)  Defendant placed the weapon on the counter and held up a cloth-type bag.  Ordering the teller to hurry, defendant threatened again to shoot her.  The teller placed the money in the bag and defendant fled the bank in a white Dodge Intrepid.  (PSR ¶ 12)

A witness followed the vehicle heading east on Burgess Road and observed a red plume of smoke coming from the Dodge as it fled.  (PSR ¶ 13)  Shortly thereafter, units from the Pensacola Police Department located the vehicle in the area of Corporate Woods and Airport Road.  Following a short highspeed chase, during which one of the pursuing officers discharged her weapon as defendant fled in the car, Grimes entered the Cordova Mall area, collided with a curb, and fled on foot. (PSR ¶ 13)  Law enforcement officers apprehended defendant, recovering the handgun used during the robbery, the white Dodge Intrepid, a ski mask, and the money stolen from the bank.  (PSR ¶ 13)  According to the U.S. Attorney's Office,

the vehicle chase and apprehension presented a risk to members of the general public. (PSR ¶ 14)

Defendant was interviewed by FBI agents on April 4, 2007, at which time he admitted his involvement in both robberies.  Defendant also identified Oniel N. Williams as the second individual involved in the February 2007 robbery. (PSR ¶ 15) Grimes provided a location where Williams lived and an accurate description of the residence.  (PSR ¶ 15)  On April 6, 2007, defendant met again with FBI agents, who showed him a picture of Williams.  Defendant positively identified Williams as "Lynx."  (PSR ¶ 17)  Grimes confirmed that on February 9, 2007, both he and Williams robbed the Sun Trust Bank branch at 6700 North Davis Highway, in Pensacola, Florida.  (PSR ¶ 17)  Following the robbery, defendant stated, he and Williams disposed of a stack of money behind the Walmart on Creighton Road. Defendant explained that he and Williams then traveled to Mobile, Alabama, where they spent the night at a motel.  (PSR ¶ 17)  According to defendant, Williams retained possession of the handgun used in the February 2007 robbery, as well as a t-shirt and pants worn during the commission of the offense.  Defendant also asserted that he had seen dye-stained money inside Williams's residence.  (PSR ¶ 17)

Having confirmed that Oniel Williams had rented a room at Motel 6 in Tillman's Corner, Alabama, on the evening of February 9, 2007, the FBI applied for a warrant to search Williams's home in Pensacola.  (PSR ¶ 18)  FBI and other law enforcement personnel executed the search warrant on April 6, 2007, recovering a silver handgun wrapped in a white sock with pink stains consistent with red dye. (PSR ¶ 19)  In addition, authorities discovered a white t-shirt matching the description provided by defendant.  The t-shirt also had a pinkish tint, believed to be

caused by the red dye that exploded from the dye pack concealed by bank personnel
in the U.S. currency stolen during the February 2007 robbery.  (PSR ¶ 19) During
execution of the search warrant, law enforcement interviewed Williams, who
admitted his involvement in the initial robbery of Sun Trust Bank.  (PSR ¶ 20)

Defendant entered a plea and cooperation agreement with the government on
May 17, 2007, acknowledging that adverse rulings or a sentence greater than
anticipated would not constitute grounds for withdrawing the plea. (Doc. 22, 9)  The
agreement provided for substantial assistance in the government's discretion:

> If, in the sole discretion of the United States Attorney,
> MARQUES D. GRIMES is deemed to have provided substantial
> assistance in the investigation or prosecution of other persons who have
> committed offenses, if the defendant has otherwise complied with all
> terms of [the] agreement, and if this assistance is prior to sentencing or
> within the time provided by Rule 35, Federal Rules of Criminal
> Procedure, then the United States Attorney will file a substantial
> assistance motion.

(Doc. 22, 9-10)  The agreement concluded, "There are no other agreements between
the United States Attorney, Northern District of Florida and MARQUES D. GRIMES,
and the defendant enters this agreement knowingly, voluntarily and upon advice of
counsel." (Doc. 22, 11)  Before signing the agreement, defendant reviewed its terms
carefully with his attorney.  (Doc. 74, 22, 26-27)  At the plea hearing, defendant
confirmed that he understood the terms and conditions of the agreement, and the
consequences of pleading guilty thereunder.  (Doc. 74, 22, 26-27)

The presiding magistrate judge conducted a model plea colloquy.  (Doc. 74)
Under oath, defendant explained that he had recently been treated for depression, but
was taking no medication for that condition.  Mr. Grimes stated that he understood

the proceedings and was not confused about the nature of his guilty plea.  (Doc. 74, 5-6)  Further, defendant assured the magistrate judge that he would not in the future claim that his plea had been entered involuntarily on account of some mental disease. (Doc. 74, 6)  Mr. Grimes swore he understood he had a right to trial, to testify should he so choose, to cross-examine adverse witnesses, and to call witnesses on his behalf. (Doc. 74, 7-9)  Defendant acknowledged that, by entering a guilty plea, he would relinquish the right to appeal his conviction and that he could appeal only his sentence.  (Doc. 74, 9-10)

Having heard the government recite a factual basis for the plea, defendant admitted his involvement in the two bank robberies, that the offenses involved firearms, and that he had previously been convicted of a felony.  (Doc. 74, 12-16) Mr. Grimes affirmed that he understood the concomitant penalties and that those penalties had been explained to him by his attorney.  (Doc. 74, 16-18) Accepting that the sentence would be determined solely by the district judge, defendant attested to his understanding that any comments or predictions as to the nature or duration of the pending sentence would be nothing more than guesses.  (Doc. 74, 20-21, 26-27)  Mr. Grimes agreed with the court that upon acceptance of the plea, the issue of guilt would be final and he could not withdraw the plea after imposition of the sentence. (Doc. 74, 28)

During the plea colloquy, the court also questioned defendant thoroughly as to his satisfaction with counsel.  (Doc. 74, 21-22)  Defendant asserted that his attorney was not forcing him to plead guilty and that he would not be back before the court to challenge the legality of his conviction on grounds of ineffective assistance of counsel.  At the magistrate judge's explicit questioning, defendant indicated that he

was satisfied with his attorney's explanation of the plea agreement and voiced no complaint with the quality of counsel's overall assistance in the matter. (Doc. 74, 22) Finally, the judge reviewed with Mr. Grimes the nature of the substantial assistance process and the relative roles of the government and the district court in that process. Defendant stated that he understood fully how cooperation with the government might potentially affect his sentence. (Doc. 74, 23-26)

On May 17, 2007, the magistrate judge filed a report and recommendation (doc. 23), recommending that the plea of guilty be accepted and defendant be adjudicated guilty; defendant entered no objection. The district court accepted defendant's guilty plea to counts I through V. (Doc. 24) According to defendant's attorney, Assistant Federal Public Defender Thomas S. Keith, who submitted an affidavit in conjunction with the government's response, Mr. Grimes and his mother began thereafter to request a mental evaluation, questioning defendant's competency to enter the plea. (Doc. 77, 33-34) Defense counsel moved to continue sentencing for a psychological evaluation, which was conducted by Dr. James D. Larson, Ph.D. (Doc. 77, 33) Upon examination, Dr. Larson concluded that defendant did not meet the criteria for insanity. (Doc. 73, 2-6)

Prior to sentencing, the government filed a motion for relief based on defendant's substantial assistance. (Doc. 54) At sentencing, the district court accepted the presentence investigation report as accurate and imposed a total sentence of 235 months imprisonment, below the mandatory minimum range. (Doc. 54, 9-10) Defendant raised no objection to the court's findings of fact or conclusions of law relating to the judgment or sentence. (Doc. 54, 11) Defendant was also sentenced to an additional fifteen months for violating the conditions of his supervised release,

which was imposed in connection with a separate bank robbery conviction. (Doc. 54, 12) The court advised defendant that he had ten days to appeal the sentences and that he should notify the Public Defender's Office should he wish to do so. The court recommended that such notice be in writing. (Doc. 54, 13)

<u>DEFENDANT'S CLAIMS</u>

Pursuant to 28 U.S.C. § 2255, defendant timely filed the instant amended motion to vacate, set aside, or correct sentence (doc. 92), asserting seven grounds on which he believes he is being held in violation of the Constitution, laws, or treaties of the United States. The government filed two responses in opposition (docs. 77 & 95).[3] Defendant alleges a violation of his procedural and substantive rights to due process of law, claiming the court failed to conduct a competency hearing and thereby allowed him to enter a plea that was not intelligent and voluntary. (Doc. 92, 9-13) Defendant also contends trial counsel rendered ineffective assistance by (1) advising him to plead guilty before undergoing a mental competency evaluation, (2) advising him not to withdraw the guilty plea, (3) promising that the sentence would not exceed ten years' imprisonment and thereby inducing defendant to plead guilty, and (4) failing to appeal the sentence. Further, defendant claims he was incorrectly charged with possession of a firearm in furtherance of a crime of violence (count IV), because, Mr. Grimes argues, he did not have control over the weapon during the commission of the offense. Finally, defendant contends that the court, confronted with evidence of defendant's mental illness, erred by not inquiring further to satisfy itself that the plea was being made knowingly and voluntarily. (Doc. 92, 31-33)

---

[3] The government responded to the original motion to vacate on March 16, 2009, and to the third amended § 2255 motion on April 27, 2010.

<u>ANALYSIS</u>

As a preliminary matter, the court notes certain general rules applicable in § 2255 proceedings following direct appeals, as well as the distinction between review under § 2255 and direct appeal.  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  *Id.*  "A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."  *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  "Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law."  *Castro v. United States*, 248 F. Supp. 2d 1170, 1174 (S.D. Fla. 2003) (citing *McCoy*, 266 F.3d at 1258).

Regarding the important difference between a § 2255 collateral challenge and direct review, "[i]t has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *See United States v. Addonizio*, 442 U.S. 178, 184 (1979).  Relief should be granted only if the challenged sentence resulted from "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *See Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) ("Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights

and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981))).

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In applying *Strickland*, the court may dispose of an ineffective assistance of counsel claim if the defendant fails to carry his burden on either of the two prongs. *See* 466 U.S. at 697.

*Procedural and Substantive Due Process*

In an effort to resolve defendant's claims in a coherent manner, the court will address together related or similar grounds. Defendant alleges first that the magistrate judge who conducted the plea colloquy erred by not making an inquiry as to his mental capacity before accepting the guilty plea. Mr. Grimes argues "there was sufficient evidence" to bring his mental state into doubt, such that the court should have inquired further. "[H]ad the district court held a competency hearing[,] defendant concludes, "the court would have . . . learned that he was not competent to plead guilty." (Doc. 92, 9) Owing to this oversight, defendant claims, the court violated his rights to procedural and substantive due process of law. (Doc. 92, 9-13)

"Due process requires that a defendant not be made to stand trial for a criminal charge unless he is mentally competent." *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987).  "The test for whether a defendant is competent to stand trial is whether he 'has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)).

"The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* "Due process requires that an adequate hearing be held on competency when the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial." *Id.* (quoting *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). "[W]hen a court has a 'bona fide doubt' as to a defendant's competence, it must *sua sponte* conduct a hearing on his competence to stand trial." *Id.* (citing *Scarborough v. United States*, 683 F.2d 1323, 1324 (11th Cir. 1982)).

Defendant's claim is without merit.  Here, the magistrate judge made a thorough inquiry as to defendant's mental health status and his capacity to enter an intelligent and voluntary plea.  At the outset of the plea hearing, defendant explained under oath that he had recently undergone psychological counseling for depression, but was taking no medication.  (Doc. 74, 4-5)  The magistrate judge asked, "[D]o you feel like your depression is causing you to be confused or in a position where you just can't understand what we're doing?"  (Doc. 74, 6)  Confirming his understanding of the proceedings and the nature of his forthcoming plea, Mr. Grimes replied, "No, sir." (Doc. 74, 6)  The court then asked explicitly, "So you're not going to come back later

and tell me that your plea was involuntary because you had some mental disease?" (Doc. 74, 6)  Again defendant responded in the negative,  assuring the magistrate judge that he would not in the future claim that his plea had been entered involuntarily on account of some mental disease.  (Doc. 74, 6)  The law is well-established that these responses constitute a "formidable barrier" to the success of this collateral challenge.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n.14 (11th Cir. 1985) ("A defendant's statement at the time of his Rule 11 hearing that his guilty plea is intelligent and voluntary is not dispositive, although it gives rise to a presumption that the plea is constitutionally adequate.").

The foregoing recapitulation of the opening exchanges of defendant's plea hearing crystallizes two points of overriding importance:  (1) the magistrate judge conducted a comprehensive and unambiguous inquiry into the status of defendant's mental health, and (2) that inquiry did not give the court any reason to suspect that defendant was so mentally compromised as to raise a "bona fide doubt" as to his competence to stand trial.  Due process does not require that a competency hearing be held merely because a defendant labors under some degree of mental illness.  *See Card v. Singletary*, 981 F.2d 481 (11th Cir. 1992) (citing *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1985) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.")); *Fallada*,

819 F.2d at 1568 ("The test for whether a defendant is competent to stand trial is whether he 'has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" (quoting *Dusky*, 362 U.S. at 402)). Because the evidence adduced at the plea hearing did not raise a bona fide doubt as to defendant's capacity to consult rationally with his attorney or understand the proceedings against him, defendant cannot show a violation of his right to procedural due process of law. *See Pate*, 383 U.S. at 385.

Nor can defendant establish that he was actually incompetent at the time he entered the guilty plea. When the issue of competence to stand trial (as opposed to the right to a hearing on competency) is raised in a request for post-conviction relief the burden on the defendant is higher:

> [A] criminal defendant is entitled to an evidentiary hearing on his claim of incompetency if he presents clear and convincing evidence to create a "real, substantial and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel. . . ." The standard of proof is high. The facts must "positively, unequivocally and clearly generate" the legitimate doubt.

*Fallada*, 819 F.2d at 1567 n.1 (quoting *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985)). Defendant clearly did not meet this higher standard, as he did not even meet the lower standard of raising a bona fide doubt as to his competency. In reaching this conclusion, the court relies on the psychiatric report of Dr. Larson and evidence that Grimes actively and competently participated in his own defense.

Though he recommended that defendant obtain psychiatric treatment, Dr. Larson did not make any finding of mental illness so severe as to suggest an inability

to participate meaningfully with counsel.  This conclusion is reinforced by evidence of defendant's interactions with his attorney, who observed, "[Defendant] seemed to understand what I was telling him and could communicate with me in a rational, appropriate manner."  (Doc. 77, 33)  Without the assistance of counsel, moreover, defendant drafted and mailed two letters to the prosecutor expressing his desire to cooperate with the government.  (Doc. 77, 36-37)  The degree of particularity in the very motion now under consideration also belies defendant's claims of actual incompetency.  Because defendant has not presented "clear and convincing evidence to create a 'real, substantial and legitimate doubt as to [his] mental capacity . . . to meaningfully participate and cooperate with counsel[,]'" he is not entitled to a post-conviction evidentiary hearing to establish actual incompetence.  *See Adams*, 764 F.2d at 1360 (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973)).

*Ineffective Assistance of Counsel*

Defendant raises five claims of ineffective assistance of counsel, arguing first that counsel erred by advising him to plead guilty without the prior benefit of a mental competency evaluation.  Defendant contends he put defense counsel on notice before entering the plea that he did not understand why he was being detained and was having thoughts of suicide.  (Doc. 92, 13-14)  The calculus is an objective one: "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  Viewed as of the time of counsel's conduct, the objective circumstances preceding the plea hearing in

controversy would not have raised any substantial doubts as to defendant's competence to enter a knowing, intelligent, and voluntary plea.   Simply put, defendant betrayed no outward manifestations of incompetence.  On the contrary, Mr. Grimes responded of his own accord on two occasions to the government's overtures concerning a plea and cooperation agreement.  (Doc. 77, 36-37)  Defendant had no documented history of mental illness and, according to his attorney, communicated regarding the criminal charges in a rational manner and displayed no delusional behavior.  (Doc. 77, 33-34)  At the plea hearing itself, defendant stated that any depression he was experiencing did not prevent him from understanding the proceedings or the nature of his guilty plea.  (Doc. 74, 5-6)  In light of the factual circumstances obtaining before defendant entered the plea, counsel's (implicit) decision to forego a competency hearing did not fall beyond "the wide range of professionally competent assistance."  *See Strickland*, 466 U.S. at 690.

Moreover, defendant cannot carry his burden to show that counsel's conduct in this regard prejudiced him in some constitutionally meaningful way.  Though the Supreme Court has made clear that counsel's performance must be evaluated without the "distorting effects of hindsight," *see id.* at 689, defendant's claim fairs no better in this instance even *with* the benefit of hindsight.  Most significantly, Dr. Larson's post-plea psychological evaluation did not yield a finding of insanity or incompetence.  In other words, defendant cannot establish "a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial."  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (establishing the applicability of the two-part *Strickland* test to challenges to guilty pleas based on ineffective assistance of counsel and describing the "prejudice"

requirement).  Having failed to demonstrate either deficient performance or prejudice, defendant cannot prevail on this ground of alleged ineffective assistance.

In ground seven, defendant argues that "defense counsel and the District Court prejudiced him and were deficient for not inquiring further when evidence before them raised questions as to his state of mind, regarding his ability to knowingly and voluntarily enter a plea." (Doc. 92, 31)  This is fallow ground to reap, as defendant simply restyles the same generally unpersuasive arguments raised in grounds one and two.  To the extent defendant advances this ground on a theory of due process, such arguments have been considered.  Defendant's objectively discernable behavior gave neither the magistrate judge nor defense counsel any reason to suspect that Mr. Grimes entered the plea while enduring such a degree of mental illness as to render him unable to consult rationally with his attorney or understand the proceedings against him.  Given defendant's outwardly lucid conduct, the court did not violate Mr. Grimes's right to procedural due process of law by failing to hold a competency hearing.  *See Fallada*, 819 F.2d at 1568.

Regarding the constitutional obligations of defense counsel, the post-plea psychological evaluation upon which defendant places so much emphasis did not yield a finding of mental incompetence.  Though he challenges the medical wisdom of this opinion, defendant does not dispute that Dr. Larson found him competent to proceed. (Doc. 92, 6)  In other words, even if counsel had moved for a hearing on the issue, the evidence suggests defendant would have been found competent to enter a plea.  Unable to affirmatively prove prejudice as required by *Strickland*, defendant cannot prevail on this (recycled) claim of ineffective assistance of counsel.  *See* 466 U.S. at 694 ("[D]efendant must show that there is a reasonable probability that, but

for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different.").

Defendant alleges in ground three that counsel rendered ineffective assistance by advising him not to withdraw the guilty plea.  According to defendant, who broached the subject of plea withdrawal before sentencing and in conjunction with his request to counsel for a post-plea psychological evaluation, Mr. Keith insisted the proceedings had advanced too far and would not allow defendant to withdraw the plea.   In consequence, Mr. Grimes concludes, he was deprived of his Sixth Amendment right to a trial by jury.  (Doc. 92, 18-23)  Defendant's interpretation of the evidence, however, largely ignores the reasoning underlying counsel's strategic advice.  Prior to Dr. Larson's evaluation, counsel cautioned defendant that by filing a motion to withdraw plea, he could jeopardize his opportunity for substantial assistance.  (Doc. 77, 33)  Following the psychological testing, counsel expressed doubt to defendant that the results of the evaluation would convince the district judge to allow him to withdraw the plea.  (Doc. 77, 34)  By this date, the government had already filed the substantial assistance motion on defendant's behalf.  (Doc. 77, 34)  Mr. Keith again warned defendant that "he could jeopardize the expected significant reduction of his sentence if he moved to withdraw his plea."  (Doc. 77, 34)  Defendant, according to counsel, agreed that it would not be in his best interest to move to withdraw the plea.  (Doc. 77, 34)

"The reasonableness of a counsel's performance is an objective inquiry." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).  Thus, in evaluating counsel's strategic decisions, the reviewing court considers "whether there was any reasonable justification for the attorney's conduct."  *See Newland v. Hall*, 527 F.3d

1162, 1184 (11th Cir. 2008).  "Because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.  Under the prevailing circumstances, defendant cannot demonstrate that no competent counsel would have advised against attempting to withdraw the plea.  The quantum of evidence marshaled against defendant was considerable and, in counsel's estimation, the presentence investigation report foretold of a prison sentence of approximately thirty-eight or thirty-nine years. (Doc. 77, 34)  Given such daunting circumstances, Mr. Keith could have determined justifiably that honoring the plea agreement, and thereby preserving the possibility of substantial assistance, was imperative.  That counsel exercised the utmost care to ensure the ultimate success of the substantial assistance motion, therefore, was not professionally unreasonable.

Defendant contends in ground four that counsel rendered ineffective assistance by promising that his sentence would not exceed ten years.  Defendant asserts he pleaded guilty in reliance upon this alleged promise, without which he would have proceeded to trial.  (Doc. 92, 23-25)  The problem with defendant's argument is that he has not suggested any credible evidentiary basis to support it.  During his plea colloquy, defendant confirmed for the court that his attorney was not forcing him to plead guilty.  Further, defendant acknowledged that the sentence would be determined solely by the district judge, and attested to his understanding that any comments or predictions as to the nature or duration of the pending sentence would be nothing more than guesses.  (Doc. 74, 20-22, 26-27)  The plea and cooperation agreement, which defendant signed and stated he understood, provided similarly that

"the sentence to be imposed is left solely to the discretion of the District Court," and "any prediction of the sentence which may be imposed is not a guarantee or binding promise." (Doc. 22, 6, 9) Mr. Keith addressed this issue by sworn statement:

> I explained to him that he was looking at a very lengthy sentence, i.e., approximately 40 years imprisonment - approximately 8 years on the bank robbery counts, 7 years mandatory consecutive on the first use of the firearm count, and 25 years mandatory consecutive on the second use of the firearm count. . . . I did not predict, much less guarantee, a sentence of 10 years imprisonment. I told him that there was no way for me to be able to tell him what his sentence would be. The defendant appeared to understand everything I explained to him and stated that he wished to enter a plea and cooperation agreement with the government.

(Doc. 77, 32) Save for some largely incredible, unsupported assertions, defendant offers no evidence to refute his attorney's sworn statements or his own concessions attendant to the plea. The law is clear that "'[c]onclusory allegations of ineffective assistance are insufficient.'" *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Refuted by the evidence of record, this conclusory allegation of ineffective assistance must fail. *See id.*

In ground five, defendant alleges counsel rendered ineffective assistance by failing to file a notice of appeal. Defendant asserts that counsel disregarded his explicit instructions to appeal the sentence imposed, which was greater than defendant had anticipated. (Doc. 92, 27-30) Likewise, defendant offers no credible evidence to support this allegation. Counsel confronted this issue in his affidavit:

> Following the sentencing, I told the defendant that he did receive a significant reduction of his sentence. I also told him that I was unaware of any meritorious grounds for an appeal (in light of the guilty plea and

no objections to the sentence imposed).  He appeared to understand and
did not tell me to take an appeal anyway.  At no time after sentencing
did the defendant call or write me to tell me to file a notice of appeal.

(Doc. 77, 35)  Unable to proffer credible evidence tending to contradict counsel's

sworn statements, defendant cannot prevail on this claim of ineffective assistance.

*See Wilson*, 962 F.2d at 998.

*Possession of a Firearm in Furtherance of a Crime of Violence*

Defendant alleges in ground six that he was incorrectly charged under 18

U.S.C. § 924(c)(1)(A) (providing for an enhanced sentence for "any person who,

during and in relation to any crime of violence or drug trafficking crime[,] . . . uses

or carries a firearm, or who, in furtherance of any such crime, possesses a firearm").

Defendant maintains he "was not at anytime aware that a firearm was being used in

the alleged crime, and never had power or control over such a weapon."  (Doc. 92,

30)  Defendant, however, cannot now avoid the effect of the concessions that

attended his plea hearing, at which the government recited a factual basis for

defendant's guilty plea.  When given an explicit opportunity to do so, defendant did

not dispute that he knowingly carried a firearm during the commission of the second

bank robbery and, aided and abetted by Oniel Williams, possessed a firearm in

furtherance of the first bank robbery.  (Doc. 74, 16) Having declined to challenge the

government's presentation of the evidence during his plea hearing, defendant is

estopped by his own affirmations from doing so on collateral review.  *See Blackledge*,

431 U.S. at 73-74 ("Solemn declarations in open court carry a strong presumption of

verity."); *Gonzalez-Mercado*, 808 F.2d at 800 n.8 ("While Rule 11 is not

insurmountable, there is a strong presumption that the statements made during the

colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975))).

Moreover, in advancing this ground, defendant simply grouses about the sufficiency of the evidence available to sustain his conviction, which is a contention reserved for direct appellate review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984))); *United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972) ("This contention questions only the sufficiency of the evidence to sustain Forrester's conviction, and is not a contention cognizable on a collateral motion under § 2255."); *Enzor v. United States*, 296 F.2d 62, 63 (5th Cir. 1961) ("The sufficiency of the evidence was a question which could and should have been raised on the original appeal."). Because an evidentiary sufficiency challenge, particularly following a plea, is not cognizable on a motion to vacate under § 2255, this ground offers no basis for relief.

*Evidentiary Hearing*

Pursuant to 28 U.S.C. § 2255(b), this court must conduct an evidentiary hearing upon defendant's motion to vacate sentence, "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief . . . ." In support of such motion, however, defendant must proffer credible and specific evidence entitling him to relief. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). Here, defendant's claims are procedurally defaulted, without merit, or otherwise refuted by the record. This court may therefore deny the requested relief without an evidentiary hearing. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible.") (quotation marks omitted); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record.").

Accordingly, it is respectfully RECOMMENDED:

That the third amended motion to vacate, set aside, or correct sentence (doc. 92) pursuant to 28 U.S.C. § 2255 be DENIED.

At Pensacola, Florida, this 28th day of February, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).